POWELL–LESTER GRAIN & SHIPPING
LIMITED, a Canadian corporation,
Plaintiff,

v.

The M/V WILKE, her engines, tackle,
apparel and furniture, and her owners
Suomen Tankkilaiva O/Y, Defendants.

CARGILL, INC., a corporation, Plaintiff,

v.

HANSEATIC–VAASA LINE, Defendant.

Civ. Nos. 67–350, 67–383.

United States District Court
D. Oregon.

June 15, 1968.

Mautz, Souther, Spaulding, Kinsey &
Williamson, Kenneth E. Roberts, Port-

land, Or., for plaintiff Powell-Lester
Grain & Shipping Limited.

White, Sutherland & Gilbertson, William F. White, Portland, Or., for plaintiff Cargill, Inc.

King, Miller, Anderson, Nash & Yerke, Curtis W. Cutsforth, Portland, Or., for defendants Suomen Tankkilaiva O/Y and Hanseatic-Vaasa Line.

OPINION

SOLOMON, Chief Judge.

Powell-Lester Grain & Shipping Limited seeks to recover $2,946.21 from the M/V Wilke and her owners. Powell-Lester claims that it sustained these damages when Hanseatic-Vaasa Line breached an agreement to furnish space aboard the M/V Wilke for 1500 long tons of barley to be shipped from Portland, Oregon, about June 18, 1967. Cargill, Inc. seeks to recover $3115.00 from Hanseatic-Vaasa Line on substantially the same facts.

On May 26, 1967, Powell-Lester and Cargill each contracted with the Hanseatic-Vaasa Line for space aboard the M/V Wilke to be loaded on or about June 18, 1967. The Wilke was proceeding south along the West Coast and was ready on June 13, 1967, to depart from Bellingham, Washington, for Portland, Oregon. The Wilke was ahead of schedule and there was the possibility that the vessel might be delayed in Portland. When Cargill could not furnish assurance that there would be a berth immediately available in Portland, Hanseatic-Vaasa Line cancelled the space agreement contracts and secured another cargo in Vancouver, B. C. The Wilke bypassed Portland.

The defendants (Hanseatic-Vaasa Line, the Wilke, and the Wilke's owners) contend that they had the right to cancel the contract. The contract provides:

"If the carrier or its agents should consider it impossible, unsafe, or (having regard to the ship's dispatch and further prosecution of her voyage) inadvisable to proceed to * * port of loading on account of condi-

tions either existing or anticipated, such as strikes, lockouts, labor troubles, * * * accidents or hindrances of any kind whatsoever, acts or restraints of government, * * * war, congestion at loading port or any circumstances beyond carrier's control, the carrier shall have the option of postponing or cancelling shipment of all or any part of the cargo covered by this contract, and the vessel shall not be bound to proceed to * * * port of loading."

■ This clause does not give the carrier an unqualified right to cancel. The clause must be given a reasonable interpretation, and the discretion conferred may not be exercised in an arbitrary or unreasonable manner or without substantial grounds. The Wildwood, 133 F.2d 765 (9th Cir.1943), *cert. denied*, Amtorg Trading Corp. v. American Foreign SS Corp., 319 U.S. 771, 63 S. Ct. 1436, 87 L.Ed. 1719 (1943). A carrier can rely on this clause only if its actions were reasonable. Surrendra (Overseas) Private, Ltd. v. S. S. Hellenic Hero, 213 F.Supp. 97 (S.D.N.Y.1963), *aff'd.*, 324 F.2d 955 (2d Cir.1963).

■ The contracts here provided that the Wilke would be in Portland ready to load about June 18, 1967. Although Cargill refused to guarantee that there would be no delay in Portland, Hanseatic-Vaasa Line was only authorized to cancel the contracts if there would be an unusual and unreasonable delay. There would have been no such delay in this case, and Hanseatic-Vaasa Line knew it. The carrier was anxious to cancel because the vessel was ahead of schedule, and it would not have been economical for Hanseatic-Vaasa Line to hold the vessel until the time for loading fixed in the contract.

Powell-Lester is entitled to a judgment for $2,942.21. Cargill is entitled to a judgment for $3,115.00.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a), Federal Rules of Civil Procedure.